PUBLIC INDEMNITY COMPANY *v.* GEORGE W. PAGE, Receiver.

AMERICAN BONDING COMPANY *v.* GEORGE W. PAGE, Receiver.

NEW AMSTERDAM CASUALTY COMPANY *v.* GEORGE W. PAGE, Receiver.

[Nos. 55-57, October Term, 1931.]

240

*Decided October 29th, 1931.*

The causes were argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Walter L. Clark, Washington Bowie, Jr., Roszel C. Thomsen, George Ross Veazey,* and *George E. Kieffner,* with whom were *Stewart & Pearre* on the brief, for the appellants.

*Herbert Levy,* for the appellee.

URNER, J., delivered the opinion of the Court.

The corporations appealing in these cases are sureties on bonds of the Chesapeake Bank of Baltimore securing deposits by the State of Maryland in that institution to the aggregate amount of $40,000. The bank having been closed and placed in the hands of the Bank Commissioner, who is administering its affairs as receiver, under statutory and judicial authority, the appellants paid, on the State's demand, the amount of its deposits, and now claim, by way of subrogation, the benefit of a right of priority which they attribute to the State with respect to the distribution of the recceivership funds among the bank's creditors. Petitions asserting such a preference were dismissed by the lower court after a hearing on their allegations and the combined answers and demurrers of the receiver. Accordingly the appellants were denied priority, and were treated as general creditors in th auditor's account subsequently filed. The appeals are from orders dismissing the petitions and overruling the exceptions.

This court has heretofore recognized and declared the right of the State to enforce a priority for its claims of a public nature over those held by private creditors of the same debtor. It is a common-law prerogative, and is based upon considerations which are thus explained in *State v. President etc. of Bank of Maryland,* 6 G. & J. 205, "The government of the State is established for the good of the whole, and can only be supported by means of its revenue; which revenue the good of the whole requires to be protected. And as it can only act by its agents, who no matter how vigilant, cannot always be present to protect its rights, a priority in the payment of its debts (which must always be of a public nature) is necessary to enable it to accomplish the ends of its institution. It is not therefore opposed to a sense of right, that the interests of all should prevail over that of an individual, when it can be asserted without disturbing vested rights; which diligent creditors can more readily acquire than the government through its agents."

242

But the State's right of priority does not in itself consti-
tue a lien. Unless made such by appropriate process, it must
yield to effective transfers of the debtor's property, or to liens
upon it which other creditors may have procured. As stated
in *State v. President etc. of Bank of Maryland, supra,* the
right of the State is "to have its debt first paid out of the
property of its debtor remaining in his hands, and no lien
standing in the way." In that case the State's potential
priority, as a depositor in the Bank of Maryland, was held
to have been lost because suitable action had not been taken
to enforce the right before the execution by the bank of a
deed of trust for the benefit of its creditors. It was said in
the opinion: "The debt due from the bank to the State, is
a debt on simple contract only, and not a lien, as is, and
must be conceded. The State therefore having no lien on
the property covered by the deed of trust, but a priority only,
in the payment of its claim, if that right of priority has not
been lost, it is subject, claiming under the common law, to
the same common law rule, applicable to the royal prerogative
right of priority in England, of the same description. That
right in England is enforced by the process in the writ of
extent in chief, or in aid, according to circumstances, and
may be here, by proceedings known to our courts. But in
either case, to make it available, the proceedings must be
resorted to before other vested rights to the property sought
to be subjected to the claim are acquired."

The principles of the decision in *State v. President etc.
of Bank of Maryland* were reaffirmed in *State v. Williams,*
101 Md. 529, 61 A. 297, 299, where the State claimed
priority of payment from the receivers of an insolvent insur-
ance company, for loss on the State's property covered by the
company's insurance and for unearned premiums. Prefer-
ence for the State was refused on the ground that no pro-
ceedings to enforce the claim were taken before the appoint-
ment of the receivers. The court said: "We do not perceive
any reason why any distinction should be made between the
effect of such a conveyance as was made in the case of *State
v. Bank, supra,* and the decree in this case, passed upon a

bill praying the dissolution of an insolvent corporation, in which cases the receivers appointed by a court under section 382 of article 23 of the Code of Public General Laws are vested with all the estate and assets of every kind belonging to such corporation from the time of their qualifying as receivers, and shall be trustees thereof for the benefit of the creditors of such corporation and its stockholders."

The receivership in this case was created under section 9 of article 11 of the Code, providing as follows: "Whenever it shall appear to the Bank Commissioner upon examination, that any institution to which this article is applicable, is conducting its business in an unsafe, or unauthorized manner, or if any such institution shall refuse to submit its books, papers and concerns to the examination of the Bank Commissioner, or if any such institution shall neglect or refuse to observe an order of the Bank Commissioner as specified in section 8 of this article, the Bank Commissioner may, with the written consent of the Governor and Attorney-General obtained prior thereto forthwith take possession of the property and business of such institution and retain possession until such institution shall resume business or its affairs be finally liquidated as herein provided. On taking possession of the property and business of any such institution the Bank Commissioner shall forthwith give notice of such fact to any and all banks, trust companies, association, and individuals holding or in possession of any assets of such institution, and shall also cause such notice to be given by advertisement in such newspapers as he may direct, and also to cause a notice to be posted on the front door of such institution as follows: 'This institution is in charge of the Bank Commissioner.' Immediately upon posting said last mentioned notice by the Bank Commissioner, the property, assets and business of such institution shall be considered to be in the possession of the Bank Commissioner, which fact shall operate as a bar to any and all attachments, liens, executions or distraints of any kind, and shall also operate to place the assets of said institution in the hands of said Bank Commissioner, as receiver, the same as if he had been appointed by an order of court.

Such institution may with the consent of the Bank Commissioner, or with the consent of the court, resume business upon such conditions as the Bank Commissioner may approve. Immediately upon taking possession of the property and business of said institution the Bank Commissioner shall forthwith cause proper proceedings to be instituted in the name of the State of Maryland versus said institution, in a court of competent jurisdiction, for the purpose of having the court assume jurisdiction over its property and business for final liquidation. The said Bank Commissioner shall receive no additional compensation for his service as receiver, but shall be allowed clerical, traveling and legal expenses, subject to the court's order. He shall furnish such bond as the court may require."

The petition of the State, originating the receivership proceedings in the court below, alleged that, the Bank Commissioner's examination of the Chesapeake Bank having disclosed that it was "conducting its business in an unsafe or unauthorized manner, in that its reserves, as required by law had become exhausted," he notified its president and directors of the financial condition of the bank, as discovered by him, and that thereupon the board of directors, by resolution adopted in pursuance of section 61 of article 11 of the Code, placed the affairs of the bank in the hands and under the control of the Bank Commissioner, by posting a notice to that effect on the front door of the bank, and immediately notified the Bank Commissioner of such action; and that he simultaneously obtained the written consent of the Governor and Attorney-General forthwith to take possession of the property and business of the bank, and to retain possession "until it should resume business or its affairs be finally liquidated," as provided by the banking laws of the State; and that the Bank Commissioner gave notice to all persons interested that he had taken possession of the property and business of the bank; and that he has caused this proceeding to be brought for the purpose of having the court "assume jurisdiction over the property, business and affairs and wind up and liquidate the said Chesapeake Bank of Baltimore if necessary, but

especially to protect equally and justly the rights and interests of all persons who may be concerned or interested in the said institution." It was requested in the petition that George W. Page, bank commissioner, be appointed to act as receiver of the bank, and that the court assume jurisdiction over its property, business, and affairs for the purposes which the petition had stated. The Chesapeake Bank, by its president and solicitor, filed a consent answer to the petition, and the court passed an order appointing and continuing Mr. Page as receiver of the bank, with power and authority to take charge and possession of its books, papers, property, and effects of every kind, and to collect its outstanding debts, and to employ all necessary clerical or other assistance in the performance of his duty. Officials and agents of the bank were required by the order to deliver its books, papers, property, and effects to the receiver, subject to the further order of the court, and the receiver was directed to give bond in the sum of $250,000, conditioned for the faithful performance of the trust reposed in him by the order and by sections 9 and 61 of article 11 of the Code, or by any future order or decree in the proceedings.

Section 61 of article 11 of the Code, to which the petition and order refer in connection with the reference to section 9, is as follows: "Any banking institution doing business under this article may, by action of its board of directors, place its affairs and assets in the hands and under the control of the Bank Commissioner, by posting a notice on its front door, as follows: 'This institution is in the hands of the Bank Commissioner.' Immediately upon posting such notice, the said institution shall notify the Bank Commissioner of such action. The posting of such notice or the taking possession of any banking institution by the Bank Commissioner shall be sufficient to place all its assets and property of whatever nature in the possession of the Bank Commissioner, as receiver."

It is argued for the appellants that the State's right of priority is enforceable so long as the debtor retains title to the property sought to be affected by the preference, and that a

transfer of title did not occur in this instance, but effectually resulted from the deed of trust in *State v. President etc. of Bank of Maryland* and the receivership in *State v. Williams*. It does not appear, however, from the opinions in those cases, that they depended upon a conclusion that the debtor corporations had completely parted with title to their property. It was because their assets had passed beyond the reach of any lien-creating process that the State's claims of priority were disallowed. The receivership in *State v. Williams* was under a Code provision which was construed in *Knabe v. Johnson,* 107 Md. 616, 620, 69 A. 420, 421, as follows: "That section, it is true, provides that where receivers of any corporation shall be appointed by a court upon or before the dissolution of such corporation they shall be vested with all the estate and assets of said corporation of every kind from the time of their qualifying as receivers, and shall be trustees thereof for the benefit of the creditors of such corporation and its stockholders, and they shall proceed to wind up the affairs of such corporation under the direction of the court by which they shall have been appointed, and shall have all powers necessary for that purpose. But this confers no beneficial title upon, or interest in, the receivers. It vests them with the right of possession of all the estate and assets, for the benefit of those in whom the title may be adjudged by the court, and it does no more."

The question whether the State could have successfully claimed the right of preference now asserted by the appellants must be determined with proper regard to the Code provisions applying specifically to receiverships of banking corporations. According to those provisions, the posting of the notice that a bank is in charge of the Bank Commissioner has the effect of placing all its property, assets, and business in his possession as receiver, and this is declared to "operate as a bar to any and all attachments, liens, executions or distraints of any kind." The Bank Commissioner is required, immediately upon taking possession of the property and business of the bank, to cause proper proceedings to be instituted in a court of competent jurisdiction, for the purpose of hav-

ing the court assume jurisdiction over the bank's "property and business for final liquidation." When action has been duly taken in pursuance of those provisions, the right of the bank to dispose of its assets is divested as fully, for all practical purposes, as if it had executed a deed of trust for the benefit of its creditors. If the resumption of the business should become feasible, under conditions approved by the Bank Commissioner, the receivership could be discontinued. Otherwise its object is "final liquidation," and that could only be prevented by a demonstration of solvency which would wholly obviate such a question as the one now presented.

The statutory provision that the possession of the Bank Commissioner as receiver shall "operate as a bar to any and all attachments, liens, executions or distraints of any kind" is literally broad enough to bar the acquisition of a lien by the State. But it is properly urged that a statute should not be construed as restricting any of the State's rights or remedies unless such a purpose is clearly indicated. The effect of the last-quoted clause will therefore be considered with due deference to that well-recognized rule of interpretation. It must also be viewed in the light of other provisions of law reflecting upon the State's attitude in regard to its interests as a bank depositor. It is provided by the Constitution and by statute that for deposits of State funds the depositories shall give security, satisfactory to the Governor, "for the safe-keeping and forth coming" of such deposits when required. Const., art. 6, sec. 3; Code, art. 95, sec. 32. Not only has the State made special provision for securing its funds on deposit, but it has enacted legislation under which it has assumed direct supervision of the business and operations of banks and trust companies incorporated under its laws. Code, art. 11. Its Bank Commissioner is authorized and directed to make at least semi-annual examinations of every such institution, and, if he has reason to believe that its capital is impaired, he may require it to make good the deficiency, and, if it fails to comply with such an order, or its business is being conducted in an unsafe or unauthorized manner, he may take it into his possession and control. Code, art. 11,

sec. 6. With respect to trust companies it is provided: "Upon the dissolution of any such company by the Legislature, court or otherwise, or in case of its insolvency, all debts or liabilities due or owing by such corporation in any of said fiduciary capacities, shall be preferred in the distribution of the assets of such company to all debts or liabilities of any nature whatsoever, including salaries and wages of employees and other preferred debts or liabilities." Code, art. 11, sec. 48. This priority for trust obligations was evidently given because of the provision in the same section, that no "bond or other security shall be required from any trust company for or in respect to any trust to which it shall be appointed executor, administrator, guardian, trustee, receiver, committee or depositary by the order of any court." It was certainly not contemplated by the Legislature that the preference thus provided for trust liabilities over any "other preferred debts," in lieu of the bond which the court is forbidden by the statute to require, should be subordinated to the State's own independently secured deposits in a trust company exercising the bank franchises conferred by the Code, art. 11, sec. 46. Under the established system of supervision of banking institutions which the State has incorporated, it has opportunity and ability to impose conditions tending to safeguard their solvency. In view of that authority, and of the separate and adequate security which is exacted for the State's deposits, and of the general policy revealed by the various provisions quoted, we are convinced that the Legislature did not intend to reserve, from the effect of the statutory receivership, the right to enforce the priority here invoked.

A discussion of the cases in other jurisdictions cited in the argument will be omitted, since our conclusion is based upon Maryland statutes and decisions.

*Orders affirmed, with costs.*

PARKE, J., concurs in the result