873 A.2d 1122

Mieczyslaw BIENKOWSKI

v.

Jonathan Paul BROOKS.

No. 34, Sept. Term, 2003.

Court of Appeals of Maryland.

April 11, 2005.

Reconsideration Denied June 7, 2005.

518

520

Daniel M. Clements (John E. Raine, III, Salsbury, Clements, Bekman, Marder & Adkins, LLC, Baltimore, Clay M. Barnes, John E. Raine, III, Towson, on brief), for petitioner.

Ronald A. Baradel (Council, Baradel, Kosmerl & Nolan, P.A., Annapolis, Nichael J. Budow, Budow and Noble, P.C., Betheda, on brief), Michael J. Budow (Richard E. Schimel, Budow and Noble, P.C., Bethesda, on brief), for respondent.

Bruce M. Bender, Van Grack, Axelson, Williamowsky, Bender & Fishman, P.C., Rockville, amicus curiae.

**522**

Argued before BELL, C.J., RAKER, WILNER, CATHELL, BATTAGLIA, JOHN C. ELDRIDGE (retired, specially assigned) and LAWRENCE R. RODOWSKY, (retired, specially assigned), JJ.

ELDRIDGE, J.

Article IV, § 22, of the Maryland Constitution grants, with some exceptions, a right of appeal from a decision by a circuit court to a three-judge "court in banc."[1] The court "in banc is established and functions 'as a separate appellate tribunal,'" and the "purpose of the constitutional provision authorizing an in banc appeal was to provide a substitute or alternate for an appeal to the Court of Appeals," *Board v. Haberlin*, 320 Md. 399, 406, 578 A.2d 215, 218–219 (1990). "The decision of the court en banc is conclusive, final and non-appealable by the party who sought the en banc review.... As to that party, a reservation of points or questions by the Court en banc is a substitute for an appeal to the Court of Appeals." *Buck v. Folkers*, 269 Md. 185, 186–187, 304 A.2d

---

1. Article IV, § 22, provides as follows:

"**Section 22. Reservation of points or questions for consideration by court in banc.**

"Where any Term is held, or trial conducted by less than the whole number of said Circuit Judges, upon the decision or determination of any point, or question, by the Court, it shall be competent to the party, against whom the ruling or decision is made, upon motion, to have the point, or question reserved for the consideration of the three Judges of the Circuit, who shall constitute a court in banc for such purpose; and the motion for such reservation shall be entered of record, during the sitting, at which such decision may be made; and the several Circuit Courts shall regulate, by rules, the mode and manner of presenting such points, or questions to the Court in banc, and the decision of the said Court in banc shall be the effective decision in the premises, and conclusive, as against the party, at whose motion said points, or questions were reserved; but such decision in banc shall not preclude the right of Appeal, or writ of error to the adverse party, in those cases, civil or criminal, in which appeal, or writ of error to the Court of Appeals may be allowed by Law. The right of having questions reserved shall not, however, apply to trials of Appeals from judgments of the District Court, nor to criminal cases below the grade of felony, except when the punishment is confinement in the Penitentiary; and this Section shall be subject to such provisions as may hereafter be made by Law."

826, 827 (1973). On the other hand, the appellee in the court in banc is not precluded from seeking review of the court in banc's decision by "the Court of Appeals [as] may be allowed by Law."

The principal issue in this case is whether Article IV, § 22, of the Maryland Constitution precludes the Court of Special Appeals from exercising jurisdiction over an "appeal" from a court in banc taken by the party who was an appellee in the court in banc. While this Court in dicta has indicated that the Court of Special Appeals is authorized to exercise jurisdiction over the merits of such appeals, or has proceeded on the assumption that the Court of Special Appeals may exercise such jurisdiction, the constitutional question has never previously been a disputed issue resolved by a holding of this Court.[2] We shall today hold that the Court of Special Appeals

---

2. *See Langston v. Langston,* 366 Md. 490, 501, 784 A.2d 1086, 1092 (2001) (The Court correctly took the position that the plain language of Maryland Rule 2–551(h) authorized an appeal from a court in banc to the Court of Special Appeals; there was, however, no discussion concerning the constitutionality of Rule 2–551(h) and Rule 8–202(d) in light of the language of Article IV, § 22, of the Constitution); *Dabrowski v. Dondalski,* 320 Md. 392, 395, 578 A.2d 211, 213 (1990) (The opinion stated that the decision of the in banc court was appealable to the Court of Special Appeals; the appealability issue, however, related to whether the in banc court's decision was a final judgment and not whether the Court of Special Appeals could exercise jurisdiction under Article IV, § 22); *Montgomery County v. McNeece,* 311 Md. 194, 206, 533 A.2d 671, 677 (1987) (Dicta by four judges that Maryland Rule 2–551 is constitutional; the holding in the case, involving an attempted further appeal from a decision of the in banc court by the party which appealed to the in banc court, was that the in banc court decision was conclusive and that there could be no appeal from the in banc decision); *O'Connor v. Moten,* 307 Md. 644, 516 A.2d 593 (1986) (The Court proceeded as if the Court of Special Appeals could exercise jurisdiction, although no constitutional issue was raised or discussed); *Dean v. State,* 302 Md. 493, 495 n. 1, 489 A.2d 22, 23 n. 1 (1985) (Dicta regarding appeals from in banc courts to the Court of Special Appeals, although the holding in the case was that the in banc court had no jurisdiction to review the decision of the single circuit judge); *Merritts v. Merritts,* 299 Md. 521, 474 A.2d 894 (1984) (The Court proceeded upon the assumption that the Court of Special Appeals could exercise jurisdiction, although no constitutional issue was raised or discussed); *Estep v. Estep,* 285 Md. 416, 420–421 n. 4, 404 A.2d 1040, 1042–1043 n. 4 (1979) (While the Court noted that the Court of Special Appeals could exercise jurisdic-

is not authorized to exercise jurisdiction over the merits of such appeals. . We shall also hold that an unsuccessful appellee in the court in banc is usually entitled to seek further appellate review by filing in the Court of Appeals a petition for a writ of certiorari.

### I.

Since the issues in this tort action concern appellate procedure and trial procedure, the underlying facts may be set forth briefly.

Early in the morning of June 3, 1997, during a rain storm and while it was still dark, Kazimera Bienkowski and her husband, Mieczyslaw Bienkowski, were walking along the side of a road in Anne Arundel County en route to a light rail station. They intended to travel by train to their place of employment in Baltimore City. While walking along the side of the road, Mrs. Bienkowski was struck and killed by a motor vehicle operated by Jonathan Paul Brooks.

Mr. Bienkowski subsequently filed in the Circuit Court for Anne Arundel County a three-count complaint against Mr. Brooks, alleging that the sole cause of the accident was Brooks's negligent driving. Count one of the complaint alleged that Mr. Bienkow-ski suffered injuries, lost wages, and incurred medical bills resulting from the accident. Count two was a survival action by Mr. Bienkowski as personal representative of the decedent's estate, and count three was a wrongful death action in which Mr. Bienkowski sought economic and non-economic damages caused by his wife's death.

Following an extensive trial before Judge Robert Heller and a jury, the case was submitted to the jury on various issues. The jury returned a verdict for the plaintiff in the total amount of $26,744.47. The jury's verdict sheet, in pertinent part, stated as follows:

---

tion, the holding in the case was that the in banc court lacked jurisdiction and that the single circuit judge's decisions were not final and, therefore, not appealable).

*"VERDICT SHEET*

"1. Do you find that the defendant, Jonathan Brooks, was negligent?

<u> X </u> YES <u> </u> NO

*(If your answer to this question was "Yes", please answer the next question. If your answer to this question was "No", then answer no further questions, but sign this form at the end.)*

"2. Do you find that defendant Jonathan Brooks' negligence caused the accident?

<u> X </u> YES <u> </u> NO

*(If your answer to this question was "Yes", please answer the next question. If your answer to this question was "No", then answer no further questions, but sign this form at the end.)*

"3. Do you find that Kazimiera Bienkowski was guilty of any negligence that caused or contributed to the accident?

<u> </u> YES <u> X </u> NO

*(If your answer to this question was "Yes", then answer no further questions, but sign this form at the end. If your answer to this question was "No", please answer the next question.)*

"4. A) What damages, if any, do you award Plaintiff, Mieczyslaw Bienkowski, individually, as a result of the accident for:

| | | |
|---|---|---|
| 1) His past medical expenses? | $ | 250.47 |
| 2) His past lost wages? | $ | 840.00 |
| 3) His non-economic damages? [1] | $ | 0.00 |
| Total of Damages | $ | 1,090.47 |

B) What damages, if any, do you award the estate of Kazimiera Bienkowski as a result of the accident for:

| | | |
|---|---|---|
| 1) Her medical expenses? | $ | 54.00 |
| 2) Her funeral expenses? | $ | 5,000.00 |
| 3) Her past non-economic damages? | $ | 0.00 |
| Total of Damages | $ | 5,054.00 |

C) What damages, if any, do you award Mieczyslaw Bienkowski as a result of the death of his wife, Kazimiera Bienkowski for:

 1) Loss of Mrs. Bienkowski's earnings during their joint lives? — $20,600.00
 2) Replacement value of Mrs. Bienkowski's house-hold services during their joint lives? — $ 0.00
 3) Non-economic damages? [2] — $ 0.00
 Total of damages? — $20,600.00

\* \* \*

---

1. "Non-economic damages are any damages that you assess for mental anguish, pain and suffering."

2. "Non-economic damages are any damages that you assess for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, attention, advice or counsel the surviving spouse has experienced or probably will experience in the future."

Thereafter, the plaintiff Bienkowski filed a motion for a new trial limited to the amount of damages. The plaintiff contended that the award of damages was inadequate and that the jury disregarded evidence related to damages. Specifically, the plaintiff complained of the jury's failure to award Mr. Bienkowski any non-economic damages for the death of his wife and failure to award any non-economic damages for Mr. Bienkowski's "serious and permanent injuries." The motion pointed out that "[e]ven *Defendant's* economist agreed at trial" that the "Plaintiff's loss of the value of household services alone [was] worth *at least $96,437.00.*" (Emphasis in original).

Judge Heller, in an order and memorandum opinion, denied the motion for a new trial limited to damages. After setting forth the facts of the case, the procedural history, and the parties' arguments, Judge Heller's opinion continued as follows (footnotes omitted):

"The Court is mindful that it must consider the core question of whether justice has been served by the jury's verdict. The Court is mindful of its responsibilities to prevent a miscarriage of justice due to an improper verdict.

The Court is likewise mindful that it should not casually overturn the verdict of the jury. \* \* \*

"The Court's conscience was not shocked by the jury's damages verdicts. As above noted, the jury awarded the plaintiff those damages sought by plaintiff with respect to all matters except non-economic damages and damages for the replacement value of Mrs. Bienkowski's household services. The Court can find no support for the argument that the jury was confused about the evidence regarding the plaintiff's damages and/or confused by the Court's instructions regarding the damages, or that the jury ignored or disregarded the evidence and/or the Court's instructions regarding the plaintiff's damages.

"The Court was more surprised that the jury found in favor of the plaintiff and against the defendant on liability especially given the testimony of the reconstruction experts called by plaintiff and defendant. The Court found the defendant's expert to be far more credible in his opinions and the basis for his opinions than that of the plaintiff's expert. In fact, the Court found the Plaintiff's reconstruction expert's testimony not credible. Upon hearing the jury's verdict the Court also suspected that the jury had in fact reached a compromise verdict. The Court does not believe it can be fair to both parties if it takes 'face value' the verdict sheet as it relates to the verdicts findings as to liability and some of the damages awarded while not taking 'face value' the verdicts of the jury as to those damages not awarded.

"Although the defendant opposes the new trial request, the defendant asks that if the Court is inclined to order a new trial, that the new trial be granted as to all issues. Plaintiff opposes the granting of a new trial as to all issues and asks only that a retrial be on damages. As justice requires fairness to both plaintiff and defendant, a retrial on damages only would, in the Court's discretion, not be fair to both parties. To close its eyes to the entire trial and focus only on the damages verdicts when the jury exhibited an

understanding of the issues before it and the instructions given would not be justice to all of the parties.

"Given that the plaintiff seeks only a new trial as to damages, and opposes a new trial if a new trial is to be granted as to all issues, and given that the Court is, as stated, mindful of its responsibility to do justice by all parties, the Court's conscience will not allow the granting of a new trial limiting the new trial to the issue of damages only, and will therefore deny the Plaintiff's motion."

■ Mr. Bienkowski filed a "notice for in banc review" under the provisions of Maryland Rule 2–551(a) and (b). In his supporting memorandum pursuant to Rule 2–551(c), Mr. Bienkowski argued that "Judge Heller failed to properly exercise his discretion and he abused his discretion in denying 'Plaintiff's Motion for New Trial on the Issue of Damages.'" [3]

3. Judge Heller's order denying the motion for a new trial was dated and signed by Judge Heller on February 3, 2001. The order was stamped "Filed" on February 6, 2001, and entered on the docket on February 6, 2001. The plaintiff's notice for in banc review was filed and entered on February 16, 2001. No issue has been raised in this Court regarding the timeliness of the notice in light of the language of Article IV, § 22. Our order modifying the grant of certiorari and expanding the issues for review by this Court did not include the timeliness issue. In this connection, compare the "express[ion][of] our views" by the majority in *Montgomery County v. McNeece, supra,* 311 Md. at 200–207, 533 A.2d at 673–677, with the "comment upon the constitutionality of Rule 2–551" by the concurring opinion in *McNeece,* 311 Md. at 213–217, 533 A.2d at 680–682, such comment being made "only because the majority of the Court has decided to do so." *See also State Roads Comm. v. Smith,* 224 Md. 537, 542, 168 A.2d 705, 707 (1961); *Sheeler v. Handelman,* 212 Md. 152, 161, 129 A.2d 78, 83 (1957); *Costigin v. Bond,* 65 Md. 122, 3 A. 285 (1886); John J. Connolly, *Maryland's Right of In Banc Review,* 51 Md. L.Rev. 434, 472–477 (1992). The timeliness issue was later presented to this Court in *Dabrowski v. Dondalski, supra,* 320 Md. at 394–395, 578 A.2d at 213, but this Court did not reach it.

Because the timeliness of an appeal relates to the propriety of an appellate court's exercise of jurisdiction, an appellate court, if it notices such a timeliness issue, will usually address the issue *sua sponte.* Nevertheless, it is also a settled principle of our appellate procedure that this Court will not ordinarily reach a constitutional issue which is neither raised by the parties nor encompassed by an order of this Court. Furthermore, our disposition of this case, as explained in Part III of

After the filing of memoranda and oral argument, the court in banc (consisting of Judges Loney, Manck and North) filed an opinion and order reversing Judge Heller's denial of the new trial motion on damages. The in banc court's order mandated that "this case is remanded for a new trial solely on the issue of damages." The opinion of the in banc court pointed out that the uncontradicted evidence showed "that during her life Mrs. Bienkowski performed household services" and that the defendant's "own economic expert valued the loss of these services at approximately $96,000.00." The in banc opinion concluded that "the trial court committed an abuse of discretion regarding household services, and . . . that error merits a new trial on the issue of damages. . . ."

The defendant-appellee before the in banc court, Mr. Brooks, appealed to the Court of Special Appeals. The Court of Special Appeals reversed the judgment of the in banc court and remanded the case to the Circuit Court for the entry of judgment in accordance with the jury verdict. *Brooks v. Bienkowski,* 150 Md.App. 87, 818 A.2d 1198 (2003). The Court of Special Appeals held that Judge Heller did not abuse his discretion in denying the motion for a new trial. The court explained (150 Md.App. at 135–136, 818 A.2d at 1226):

> "In cases where liability is hotly contested, a compromised verdict, in which the jury finds for the plaintiff as to liability but awards no non-economic damages, can be a verdict that renders basic justice to the parties. Judge Heller said that he believed this was such a case. We are unable to say that he was wrong. The jury was told that they were not required to believe the testimony of *any* witness. This meant, of course, that they were not required to believe Mr. Bienkowski or any other witness called to discuss damages. Alternatively, the jury could have had serious doubts about whether the proof of non-economic

this opinion, *infra,* will leave the case in the same posture as it would be if the notice were held to be untimely.

For all of these reasons, we shall not decide whether the notice for in banc review was timely filed.

damages was too speculative and in the 'politics of jury deliberation,' the jury could have given the full amount requested as to one damage element (*e.g.,* the $20,860 for Mrs. Bienkowski's future loss of wages) and zero dollars for other types of damage. Judge Heller was in a far superior position than we, or any other appellate court, to determine whether the compromised verdict of the sort he believed was rendered in this case achieved justice."

The plaintiff then filed a timely petition for a writ of certiorari which this Court granted. *Bienkowski v. Brooks,* 376 Md. 49, 827 A.2d 112 (2003). The certiorari petition presented what purported to be four questions, with two of them relating to alleged errors by the Court of Special Appeals in reviewing the decisions below. The other two questions asserted errors by Judge Heller in denying the motion for a new trial allegedly on the theory of a "compromised verdict." The latter questions were as follows:

"In a wrongful death/negligence action, does Maryland recognize the theory of a 'compromised verdict' as to the liability issues as a valid basis to deny Plaintiff a new trial on the issue of damages when a jury fails to award that Plaintiff any damages for uncontradicted economic and non-economic losses?

"If so, can the trial judge make a factual finding or determination of a 'compromised verdict', as a basis for denying Plaintiff's Motion for a new trial, based solely on suspicion and speculation and without any evidence of record whatsoever to support that finding?"

After the filing of briefs and oral argument before this Court on the questions presented in the certiorari petition, this Court issued an order having the effect of amending our previous order granting the certiorari petition and adding two issues. *Bienkowski v. Brooks,* 385 Md. 728, 870 A.2d 622 (2003).[4] The Court requested supplemental briefs and re-

---

4. With regard to supplemental orders by this Court having the effect of amending our certiorari order and adding issues, *see* Maryland Rule 8–

scheduled the case for further oral argument on additional issues. These two additional issues are as follows:

"I. Whether, in light of the wording of Article IV, § 22 of the Maryland Constitution, the Court of Special Appeals had jurisdiction to entertain and decide the merits of the appeal from the court en banc, and, in this connection, whether the notation in *Estep v. Estep*, 285 Md. 416, 420–421 n. 4, 404 A.2d 1040, 1042–1043 n. 4 (1979), is erroneous.

"II. With regard to the ruling on the motion for a new trial, and if the Court of Special Appeals had jurisdiction to decide the merits of the appeal from the court en banc, whether the Court of Special Appeals should review the circuit judge's decision for abuse of discretion, or should review solely the determination by the court en banc."

Since our answer to the first additional issue shall be that the Court of Special Appeals lacks authority to exercise jurisdiction over the merits of appeals from in banc courts, the second additional issue, as worded in the above-quoted order, is no longer presented by the case. Nevertheless, we shall answer the substance of the second issue in terms of this Court's review of the decisions below.

## II.

### A.

Article IV, § 22, originated with the Maryland Constitution of 1867. The idea of an appeal to three circuit judges in banc was apparently first proposed to the 1867 Constitutional Convention by Delegate Andrew K. Syester of Washington County. Delegate Syester was a lawyer practicing in Hagerstown. The proposal was made in a speech on Friday, July 19, 1867,

---

131(b); *Maryland Reclamation v. Harford County*, 382 Md. 348, 351 n. 2, 855 A.2d 351, 352–353 n. 2 (2004); *Edwards v. Corbin*, 379 Md. 278, 287 n. 5, 841 A.2d 845, 850 n. 5 (2004); *Brooks v. Lewin Realty*, 378 Md. 70, 75, 835 A.2d 616, 618–619 (2003); *Robinson v. Bunch*, 367 Md. 432, 439–441, 788 A.2d 636, 641–642 (2002), and cases there cited.

to the Convention. According to a Baltimore newspaper account, "Mr. Syester proposed that the three Judges [of a circuit] should also hold a court of revision in each district, and to this the poor man could take an appeal when he could not afford to go up to the Court of Appeals of the State." [5] A Hagerstown newspaper quoted Delegate Syester's speech as follows:

"But there was a large class of people humble in life, with but scanty means, struggling on with adversity, and misfortune too poor [to] pay the uncommon fees necessary to be paid counsel in prosecuting appeals.

"There were thousands of people who have toiled along the weary journey of life with but small gains, and limited accumulations, people to whom the loss of a few hundreds of dollars would produce bankruptcy, and whose families would be beggared. To all such, the prosecution of an appeal was a measure of so much hazard that a conscientious lawyer would always advise a submission to even an unlawful ruling of the one judge, rather than put in jeopardy the little all that his client possessed in the world." [6]

On Monday, July 22, 1867, Mr. Syester's fellow Washington County delegate, Richard Henry Alvey, also a Hagerstown lawyer, formally proposed to the Convention the provision which became Article IV, § 22.[7] In one of the earliest cases involving § 22 to come before this Court, with Chief Judge Alvey on the panel, § 22 was described as follows (*Costigin v. Bond,* 65 Md. 122, 123–124, 3 A. 285, 285 (1886)):

"The Constitution, Art. 4, § 22, gave a new right of appeal. When a trial is conducted by less than the whole

---

**5.** *American and Commercial Advertiser,* July 20, 1867, at 4, reprinted in John J. Connolly, *Maryland's Right of In Banc Review, supra,* 51 Md. L.Rev. at 451.

**6.** *The Hagerstown Mail,* August 2, 1867, at 2, reprinted in John J. Connolly, *Maryland's Right of In Banc Review, supra,* at 452. Delegate Syester later became Attorney General of Maryland.

**7.** Delegate Alvey later became a very distinguished judge and then Chief Judge of this Court.

number of the Judges of a Circuit Court, it is competent for a party against whom a decision is made to have the point or question reserved for the consideration of the three Judges *in banc;* and their decision is to be conclusive against him. This proceeding is in substitution of an appeal to the Court of Appeals, and makes a considerable alteration in the law on this subject. The change is not to be extended by construction beyond the terms of the Constitution."

The principal reason for Article IV, § 22, according to Judge Alvey, although in a case not directly involving § 22, was to create "a court *in banc,* where parties can have questions of law deliberately considered by at least three judges, without the delay and expense of an appeal to the Court of Appeals...." *Roth v. House of Refuge,* 31 Md. 329, 333 (1869). This was the same reason which had been suggested to the 1867 Convention by Delegate Syester. Another reason appears to have been to reduce the governmental expense associated with numerous appeals in the Court of Appeals. *See* John J. Connolly, *Maryland's Right of In Banc Review,* 51 Md. L.Rev. 434, 446–459 (1992). In addition, one scholar, who has made a comprehensive study of § 22's history, has suggested that the provision was a compromise between those convention delegates who believed that three judges should preside over circuit court trials and those delegates who favored a predominantly single-judge system. John J. Connolly, *Maryland's Right of In Banc Review, supra,* at 435–459.[8]

---

**8.** During the first half of the nineteenth century, trials in Maryland county courts, including jury trials, were often presided over by three judges rather than by a single judge. One of the issues debated at the 1867 Constitutional Convention was whether three judges or one judge should normally preside over important cases in the circuit courts. *See* John J. Connolly, *Maryland's Right of In Banc Review, supra,* at 440–459; Philip B. Perlman, *Debates of the Maryland Constitutional Convention of 1867,* at 350–357 (1923). The Convention's final product, set forth in Article IV, § 21, of the 1867 Constitution, was as follows: "One Judge, in each of the above Circuits, shall constitute a quorum for the transaction of any business...." The present provision, Article IV,

During the 1867 Constitutional Convention, the provision which became Article IV, § 22, underwent some revisions. As originally proposed to the Convention by Delegate Alvey on Monday, July 22, 1867, the provision read as follows (*Proceedings of the State Convention of Maryland To Frame a New Constitution,* at 435–436 (Annapolis 1867)):

"Where any term is held, or trial conducted by one of said Judges alone, upon decision or determination of any point or question by him, it shall be competent to the party or parties against whom the ruling or decision is made, upon motion, to have the point or question reserved for the consideration of the three Judges of the Circuit, who shall constitute a Court in *banc* for such purpose; or said party or parties may elect to have said decision or determination reviewed on appeal to the Court of Appeals, in cases where by law an appeal will lie; but in all cases of points or questions reserved, the motion therefor shall be entered, of record during the sitting, at which such ruling or decision was made, and such motion shall be a waiver of the right of appeal to the Court of Appeals, from such decision or judgment; and in order that the points or questions reserved may be fairly presented to the Judges in *banc,* the said Circuit Judge trying the cause shall make full and fair notes of such of the proceedings before him, as will fully present such points or questions; and the decision of the said Judges in *banc* shall be the effective determination of the point or question reserved, and judgment or other proceedings shall be had thereupon. The right of having questions reserved shall not, however, apply to trials of appeals from Justices of the Peace."

See also, Philip B. Perlman, *Debates of the Maryland Constitutional Convention of 1867,* at 333 (1923).

---

§ 21(d), states: "Except as otherwise provided by law, one judge shall constitute a quorum for the transaction of any business." The historical material, and the placement of the in banc provision immediately after § 21, seem to confirm Mr. Connolly's view that one of the reasons for § 22 was that it represented a compromise between those favoring a three-judge system and those favoring a single-judge system.

Although there seemed to be no objections to the substance of Delegate Alvey's proposal, there was evidently a concern about some of the language. Delegate Syester appeared to be concerned that the reference to "appeal to the Court of Appeals, where by law an appeal will lie," might not include some criminal cases in which appellate review was by writ of error. John J. Connolly, *Maryland's Right of In Banc Review, supra,* at 452–453. On July 31, 1867, Delegate Alvey proposed substitute language which was very close to the final language of § 22, and which included the words "right of appeal or writ of error." Delegate Syester then moved to insert the language "civil or criminal" after the word "cases," and this amendment was accepted by Delegate Alvey. Delegate William N. Hayden of Carroll County offered an amendment which became the next to the last clause of § 22, excluding from the section criminal cases which were neither felonies nor misdemeanors punishable by imprisonment in the penitentiary. Philip B. Perlman, *Debates of the Constitutional Convention of 1867, supra,* at 383. Section 22 was then adopted by the Convention in its final form as follows:

"Where any Term is held, or trial conducted by less than the whole number of said Circuit Judges, upon the decision, or determination of any point, or question, by the Court, it shall be competent to the party, against whom the ruling or decision is made, upon motion, to have the point, or question reserved for the consideration of the three Judges of the Circuit, who shall constitute a Court in *banc* for such purpose; and the motion for such reservation shall be entered of record, during the sitting, at which such decision may be made; and the several Circuit Courts shall regulate, by rules, the mode and manner of presenting such points or questions to the Court in *banc,* and the decision of the said Court in *banc* shall be the effective decision in the premises, and conclusive, as against the party, at whose motion said points or questions were reserved; but such decision in *banc* shall not preclude the right of Appeal, or writ of error to the adverse party, in those cases, civil or criminal, in which appeal, or writ of error to the Court of Appeals may

be allowed by Law. The right of having questions reserved shall not, however, apply to trials of Appeals from judgments of Justices of the Peace, nor to criminal cases below the grade of felony, except when the punishment is confinement in the Penitentiary; and this Section shall be subject to such provisions as may hereafter be made by Law."

The only change in § 22 thereafter was a 1978 constitutional amendment which substituted "District Court" for "Justices of the Peace."

## B.

As stated by Judge Alvey only a few years after the adoption of the Constitution of 1867, with respect to the meaning of another new provision in that Constitution, where there exists a "general rule for the construction of statutes," there "can be no good reason suggested why this same general principle ... should not also apply as a rule of interpretation of the Constitution." *New Central Coal Co. v. George's Creek Coal and Iron Co.*, 37 Md. 537, 557 (1873). Much more recently, this was reiterated by Judge Battaglia for the Court *Davis v. Slater*, 383 Md. 599, 604, 861 A.2d 78, 81 (2004): "When interpreting constitutional provisions, we generally employ the same rules of construction that are applicable to the construction of statutory language." *See also, e.g., Fish Market v. G.A. A., Inc.*, 337 Md. 1, 8, 650 A.2d 705, 708 (1994); *Luppino v. Gray*, 336 Md. 194, 204 n. 8, 647 A.2d 429, 434 n. 8 (1994) ("The rules governing the construction of statutes and constitutional provisions are the same"), and cases there cited.

When attempting "to ascertain the meaning of a constitutional provision" or other enactment, "we first look to the normal, plain meaning of the language. * * * If that language is clear and unambiguous, we need not look beyond the provision's terms...." *Davis v. Slater, supra*, 383 Md. at 604–605, 861 A.2d at 81. *See, e.g., Comptroller v. Phillips*, 384 Md. 583, 591, 865 A.2d 590, 594 (2005) ("If the plain language ... is unambiguous and is consistent with the [enactment's] appar-

ent purpose, we give effect to the [enactment] as it is written"); *Lee v. Cline,* 384 Md. 245, 256–257, 863 A.2d 297, 304 (2004); *Collins v. State,* 383 Md. 684, 688, 861 A.2d 727, 730 (2004) ("We begin with the plain language of the [enactments]"); *Arundel Corp. v. Marie,* 383 Md. 489, 502, 860 A.2d 886, 894 (2004) ("If there is no ambiguity in that language [of an enactment], ... the inquiry as to legislative intent ends; we do not then need to resort to the various, and sometimes inconsistent external rules of construction"); *Deville v. State,* 383 Md. 217, 223, 858 A.2d 484, 487 (2004) ("Ordinary and popular understanding of the English language dictates interpretation of terminology").

Moreover, when the meaning of a word or phrase in a constitutional or statutory provision is perfectly clear, this Court has consistently refused to give that word or phrase a different meaning on such theories that a different meaning would make the provision more workable, or more consistent with a litigant's view of good public policy, or more in tune with modern times, or that the framers of the provision did not actually mean what they wrote. *See, e.g., Montrose Christian School v. Walsh,* 363 Md. 565, 595, 770 A.2d 111, 129 (2001) (The "phrase ... clearly does not mean what is suggested.... We decline to construe 'purely' as if it were 'primarily' or 'some' "); *Dodds v. Shamer,* 339 Md. 540, 554, 663 A.2d 1318, 1325 (1995) (Refusing to construe a statute, specifically applicable to only four named counties, as applicable to other counties); *Davis v. State,* 294 Md. 370, 378, 451 A.2d 107, 111 (1982) (To construe the phrase in a statute "as contended for by the petitioner, would be to re-draft the statute under the guise of construction. * * * [I]t would be 'to assume an Alice in Wonderland world where words have no meaning,' *Welsh v. United States,* 398 U.S. 333, 354, 90 S.Ct. 1792, 1803, 26 L.Ed.2d 308, 326 (1970) (concurring opinion). This we decline to do"); *Mauzy v. Hornbeck,* 285 Md. 84, 93, 400 A.2d 1091, 1096 (1979) (refusing to construe the statutory phrase "all professional employees" as "only certain types of" professional employees); *State Farm Mutual v. Insurance Commissioner,* 283 Md. 663, 671, 392 A.2d 1114, 1118 (1978);

*Wheeler v. State,* 281 Md. 593, 598, 380 A.2d 1052, 1054 (1977), *cert. denied,* 435 U.S. 997, 98 S.Ct. 1650, 56 L.Ed.2d 86 (1978) ("We are not at liberty to bring about a different [constitutionality] result by inserting or omitting words" in the enactment); *Slate v. Zitomer,* 275 Md. 534, 539, 544, 341 A.2d 789, 795 (1975), *cert. denied sub nom. Gasperich v. Church,* 423 U.S. 1076, 96 S.Ct. 862, 47 L.Ed.2d 87 (1976) (The Court rejected an argument that the phrase "prior to" in a statute should be construed as "subsequent to" allegedly because the former phrase was an "error of draftsmanship" and the latter phrase reflected "the real legislative intent." The Court also held that the principle, that statutes should not be construed so as to lead to alleged undesirable consequences, "does not extend so far as to allow a court to substitute for the words 'prior to' [a certain date] words conveying an exactly opposite meaning").

■ Turning to the present language of Article IV, § 22, of the Maryland Constitution, the words "Court of Appeals" are as clear and unambiguous as any three words could be. The words denominate the State's highest court which originated in the mid-seventeenth century and has existed continuously from that time until the present. Furthermore, there has been only one Court of Appeals. There has never been another Maryland court with the same name. It is the Court provided for in Article IV, §§ 1, 14, 17, and 18 of the Maryland Constitution.

Obviously Art. IV, § 22, when adopted in 1867, contemplated that the unsuccessful appellee in a court in banc could seek further appellate review in this Court, *i.e.,* the Court of Appeals. This proposition is not disputed by the respondent in the present case. The issue, therefore, is not the intent of § 22 when it was adopted in 1867. The only issue is whether any constitutional amendment since 1867 changed the provision in § 22 for further appellate review by the Court of Appeals.

The constitutional authorization for the General Assembly to create intermediate appellate courts, between the circuit

courts/courts in banc and the Court of Appeals, was proposed by Ch. 10 of the Acts of 1966, adopted by the voters in November of 1966, and set forth primarily in Article IV, § 14A, of the Maryland Constitution.[9] Ch. 10 proposed amending other sections of the Constitution's judicial article (Article IV) so as to take into consideration any intermediate appellate courts created by the General Assembly pursuant to § 14A. Thus, Ch. 10 proposed, and the voters adopted, amendments to Article IV, §§ 1, 2, 3, 15, 16, 18, and former § 33, as well as amendments to Article V, §§ 3 and 6, and Article XVII, § 1 (now § 3). These amendments all contained language referring to "intermediate courts of appeal" or similar language. Ch. 10 of the Acts of 1966 did *not*, however, propose any amendment to Article IV, § 22. If there was any purpose of authorizing the General Assembly to confer jurisdiction upon an intermediate appellate court to review in banc decisions, it is likely that § 22 would have been amended like all of the other provisions were amended.

Ch. 10's amendment to former Article IV, § 33, is quite significant. In *Roth v. House of Refuge, supra,* 31 Md. 329, Judge Alvey for this Court compared the individual Baltimore City courts to the county circuit courts, and he then drew an analogy between the Supreme Bench of Baltimore City and the courts in banc. In holding that an appeal could be taken from one of the Baltimore City courts to the Supreme Bench of Baltimore City in a habeas corpus case, Judge Alvey for the Court stated (31 Md. at 332–333);

"It will be observed that the power given to this court [the Supreme Bench]is large and comprehensive. If there be *any matter of law* determined by the judges in the

---

9. Article IV, § 14 A, states as follows:
 "**Section 14A. Creation of intermediate courts of appeal; prescribing jurisdiction and powers.**
 "The General Assembly may by law create such intermediate courts of appeal, as may be necessary. The General Assembly may prescribe the intermediate appellate jurisdiction of these courts of appeal, and all other powers necessary for the operation of such courts."
 The Court of Special Appeals has been the only intermediate appellate court created pursuant to Article IV, § 14A.

several courts, except it be in cases of appeal from justices of the peace, it is liable to be reheard and determined by the Supreme Bench; the great object being to secure uniformity of decision, and greater deliberation of judgment than was practicable in the separate courts, presided over by a single judge. And such being the scope and design of its jurisdiction, the relation of the Supreme Bench to the other courts of the city is that of a court *in banc,* where parties can have questions of law deliberately considered by at least three judges, without the delay and expense of an appeal to the Court of Appeals. . . . "

Former Article IV, § 33, after setting forth certain powers and duties of the Supreme Bench of Baltimore City, went on to provide for review by the Supreme Bench of certain types of matters arising in the individual Baltimore City courts and further provided a "right of Appeal to the Court of Appeals" from the Supreme Bench's decisions. The 1966 constitutional amendment authorizing the creation of intermediate appellate courts, Ch. 10 of the Acts of 1966, repealed those parts of former Article IV, § 33, providing for review in the Supreme Bench with a further right of appeal to the Court of Appeals. The 1966 constitutional amendment did not, however, change Article IV, § 22, which this Court had deemed an analogous provision for the several counties.[10] This confirms the view that the constitutional authorization for the Court of Special Appeals was not intended to affect the jurisdiction conferred on in banc courts and the Court of Appeals pursuant to § 22.

Following the adoption of Article IV, § 14A, in 1966, there have been several amendments to various sections of Article IV of the Constitution which have expressly taken into account the creation of an intermediate appellate court or have specifi-

---

10. The constitutional provisions relating to the Supreme Bench of Baltimore City and its constituent courts were repealed by Ch. 523 of the Acts of 1980, adopted by the voters in November 1980. The Circuit Court for Baltimore City took the place of the Supreme Bench and its constituent courts. Whether, as a result of the 1980 constitutional amendment, Article IV, § 22, is now applicable in Baltimore City is an issue which has not been decided by this Court.

cally mentioned the Court of Special Appeals. Those amended sections of Article IV include §§ 4A, 4B, 5, and 18. Nevertheless, none of these constitutional amendments modified Article IV, § 22, or authorized the General Assembly to provide for an appeal from a court in banc to an intermediate appellate court or to the Court of Special Appeals.

As mentioned earlier in this opinion, the only change in the wording of Article IV, § 22, from its adoption in 1867 to the present time, occurred in 1978. The first clause of the last sentence in § 22, when adopted in 1867, read as follows: "The right of having questions reserved shall not, however, apply to trials of Appeals from judgments of Justices of the Peace...." The offices of Justice of the Peace, along with certain other trial courts of limited jurisdiction, were abolished by a constitutional amendment effective on the first Monday of July 1971. *See* Ch. 789 of the Acts of 1969, ratified by the voters in November 1970. The same constitutional amendment created the District Court of Maryland which took the place of Justice of Peace courts and the other courts of limited jurisdiction which had been abolished. The 1970 constitutional amendment, however, did not amend Article IV, § 22, by substituting the phrase "District Court" for "Justices of the Peace" in the exclusionary language of § 22's final sentence.[11] Consequently, it was certainly arguable that, between July 1971 and 1978, an in banc court could exercise appellate jurisdiction over a circuit court judgment on appeal from the District Court. This oversight by the draftsman of the 1970 constitutional amendment was corrected by Ch. 681 of the Acts of 1977, ratified by the voters in November 1978.

The 1978 constitutional amendment deleted the phrase "Justices of the Peace" and substituted the phrase "the District

---

11. A good argument could be made that the 1970 constitutional amendment also failed to do this by implication. The relevant interim provision of the amendment, now set forth in Article IV, § 41–I(c), stated that "[a]ll *statutory* references to justices of the peace ... shall be deemed to refer to the District Court...." (emphasis added). There was no interim provision dealing with *constitutional* references to justices of the peace.

Court" in the last sentence of Article IV, § 22. Consequently, the 1978 constitutional amendment was designed to, and did, make Article IV, § 22, reflect the current Maryland judicial system. Most significantly, however, the 1978 constitutional amendment did *not* substitute "intermediate appellate court" or "Court of Special Appeals" for the words "Court of Appeals" in Article IV, § 22. By 1978, appeals in most types of circuit court cases were taken directly to the Court of Special Appeals, with the Court of Appeals' appellate jurisdiction being upon writ of certiorari. Article IV, § 22, was not changed to reflect this practice. Instead, further appellate review of in banc decisions was left exclusively with the Court of Appeals.

The legislative history of the 1978 constitutional amendment strongly suggests that the refusal to change the "Court of Appeals" language in Article IV, § 22, was deliberate. The bill which became the 1978 Constitutional Amendment was House Bill 463 of the 1977 legislative session. *See* Ch. 681 of the Acts of 1977. The bill was the product of the House of Delegates' Constitutional and Administrative Law Committee, which began work on the bill during the summer of 1976. The Department of Legislative Reference's file on the bill contains substantial correspondence between the Committee and William H. Adkins, II, occurring from the summer of 1976 through January 1977, and concerning several proposed changes to Article IV of the Constitution. Mr. Adkins was the State Court Administrator throughout this period.[12] Among the correspondence in the Department of Legislative Reference's bill file, on the bill which became the 1978 constitutional amendment, was a January 1977 memorandum to the Committee from Administrator Adkins. In that memorandum, Mr. Adkins stated that he had reviewed the proposed constitutional amendment "attached to the Report of the Constitutional and Administrative Law Committee," and that he had "one specific question which relates to Art. IV, § 22." Administra-

---

12. Mr. Adkins later served as a judge of the Court of Special Appeals and thereafter as a judge of this Court.

tor Adkins pointed out that writs of error had been abolished and that, under Title 12 of the Courts and Judicial Proceedings Article of the Code, most direct appeals from the circuit courts were taken to the Court of Special Appeals. The Administrator recommended striking out the language "appeal, or writ of error to the Court of Appeals" in § 22 and substituting "appeal to the Court of Special Appeals." While recognizing that his proposal was "in some ways a substantive change," Administrator Adkins went on to say that it would represent "the correction of an obsolete ... Constitutional provision...." The General Assembly, however, rejected Administrator Adkins's proposal, and the constitutional amendment did not change the phrase "appeal, or writ of error to the Court of Appeals" in Article IV, § 22.

Perhaps one of the reasons why the General Assembly did not change the phrase "Court of Appeals" in Article IV, § 22, might be that Court of Appeals' review of in banc decisions, rather than Court of Special Appeals' review of such decisions, is more in accord with Maryland's present system of trials and appeals. Although Maryland has what is sometimes called a four-level judiciary, or in reality a five-level judiciary when courts in banc are considered, generally a litigant is entitled to pursue his or her case through three levels only. A litigant is entitled to a trial court decision, usually one right of appeal, and then a right to seek further discretionary appellate review in the Court of Appeals. For example, in a case tried in and decided by the District Court, the unsuccessful litigant normally has a right of appeal to a circuit court. In such a case, the circuit court sits as an appellate court.[13] The unsuccessful party in the appeal to the circuit court has no right of a further appeal to the Court of Special Appeals. Instead, the aggrieved party in the circuit court has the right to seek further appellate review by filing in the Court of

---

**13.** The Maryland Constitution, in Article IV, § 20(a), grants to the circuit courts both "original and appellate" jurisdiction. On the other hand, the District Court has only "original jurisdiction," Article IV, § 41A, and the Court of Special Appeals has only "appellate jurisdiction," Article IV, § 14A.

Appeals a petition for a writ of certiorari which the Court of Appeals, in its discretion, may or may not grant. *See* Maryland Code (1974, 2002 Repl.Vol., 2004 Supp.), §§ 12–305, 12–307(2), 12–401, and 12–403 of the Courts and Judicial Proceedings Article.

Similarly, in a case originating in and decided by a circuit court, the losing party in the circuit court ordinarily has the right of appeal to the Court of Special Appeals. The unsuccessful party in the Court of Special Appeals has no further right of appeal. Such party does have a right to seek appellate review in the Court of Appeals by filing a petition for a writ of certiorari which the Court of Appeals, in its discretion, may grant or deny. *See* §§ 12–201, 12–203, 12–301, 12–303, 12–307, and 12–308 of the Courts and Judicial Proceedings Article.

The right of any party in a circuit court case to take an appeal to a court in banc, granted by Article IV, § 22, places such party in the same position as most other litigants in Maryland. As pointed out above, there is normally only one direct appeal under the Maryland system. Moreover, a successful party in a trial court, who is an appellee on a direct appeal, and who loses in the appellate court, has no right to take an appeal to a higher appellate court. The unsuccessful party in a direct appeal, whether the party is appellant or appellee, is limited to seeking further appellate review by filing in the Court of Appeals a petition for a writ of certiorari. The Court of Appeals has the right to grant or deny the certiorari petition. If we were to construe the words "Court of Appeals" in Article IV, § 22, to mean "Court of Special Appeals," we would be authorizing two levels of direct appeals, one by either party in the circuit court to the court in banc and one by the appellee in the court in banc to the Court of Special Appeals. This would amount to greater appellate rights than most other Maryland litigants would have today.[14]

---

14. It is true that the appellant before an in banc court does not have the right to appellate review at the next level, and in this sense, does not have the same appellate rights as other appellants not pursuing the in

Moreover, construing Article IV, § 22, to permit an appeal by the in banc appellee to the Court of Special Appeals would not be consistent with the intent or purposes underlying that constitutional provision. It is clear from the plain language of § 22, from the discussion at the 1867 Constitutional Convention, and from our cases, that the party who appealed from the circuit court to the court in banc is not, after an adverse in banc decision, then entitled to seek further appellate review. In the words of the Constitution, "the decision of the said Court in banc shall be ... conclusive, as against [such] party...." If, however, the appellee before the *in banc* court is entitled to appeal to the Court of Special Appeals, nothing in the language of Article IV, § 22, would preclude the appellant in the court in banc, who is an unsuccessful party in the Court of Special Appeals, from filing in the Court of Appeals a certiorari petition. This Court, proceeding upon the assumption that an in banc appellee has a right of appeal to the Court of Special Appeals, has held that the in banc appellant, who is an unsuccessful appellee in the Court of Special Appeals, is entitled to file in this Court a petition for a writ of certiorari and, if the petition is granted, is entitled to appellate review in this Court. *Langston v. Langston,* 366 Md. 490, 502, 784 A.2d 1086, 1092 (2001). Nevertheless, allowing an appellant before the court in banc to seek additional appellate review, following a direct appeal to the Court of Special Appeals, obviously violates the intent and spirit embodied in Article IV, § 22.

The discussions at the 1867 Constitutional Convention, along with the opinions of this Court, disclose that the principal purpose of Article IV, § 22, was to provide litigants with a less expensive, local, and faster appeal than an appeal to the Court of Appeals, which required a journey to Annapolis. Another purpose was to reduce the expense associated with the large number of appeals in the Court of Appeals. If Article IV, § 22, were construed to authorize an appeal to the Court of

---

banc route. Nonetheless, this would be true regardless of whether the "Court of Appeals" language in Article IV, § 22, is construed to mean "Court of Special Appeals" or "Court of Appeals."

Special Appeals by an in banc appellee, and then further review in this Court by a petition for a writ of certiorari, the result in many cases could be two separate appellate proceedings before two different appellate courts in Annapolis, resulting in delay and two separate journeys by counsel or litigants to Annapolis.[15] This would obviously not be consistent with the purposes underlying Article IV, § 22.

In arguing that an appellee in a court in banc has a right of direct appeal from the in banc court to the Court of Special Appeals, the respondent Brooks chiefly relies upon the statutory sections providing that most appeals from circuit courts are taken to the Court of Special Appeals, and upon Rule 2–551 which specifically provides that appeals from courts in banc are to be taken to the Court of Special Appeals. The respondent invokes the last clause of Article IV, § 22, which states that the constitutional section "shall be subject to such provisions as may hereafter be made by Law."

Preliminarily, we point out that no statute expressly provides for appeals from in banc courts to the Court of Special Appeals. Furthermore, this Court's rule-making authority has never been construed so broadly as to permit this Court to prescribe or change the subject matter jurisdiction of various Maryland courts.

More importantly, however, the constitutional authority to implement a constitutional provision, such as set forth in the last clause of Article IV, § 22, does not authorize the General Assembly by statute or this Court by rule to contradict or amend the Constitution. *See Washabaugh v. Washabaugh,* 285 Md. 393, 411, 404 A.2d 1027, 1037 (1979) (The constitutional authority to implement Article IV, § 22, by rules does not authorize a rule which is inconsistent with § 22, as this would be a "license ... to make a substantive change in the Maryland Constitution ..., a result we do not think was contemplated by the drafters of section 22"). As the Court

---

**15.** Both the Court of Special Appeals and the Court of Appeals sit in Annapolis.

emphasized in *Costigin v. Bond, supra,* 65 Md. at 124, 3 A. at 285, Article IV, § 22, "is not to be extended by construction beyond the terms of the Constitution."

In sum, we hold that the Court of Special Appeals may not exercise jurisdiction over the merits of an appeal from a court in banc. Under the plain language of the Maryland Constitution, any further appellate review of a decision by a court in banc must be in the Court of Appeals.

## C.

The next question, logically, concerns the nature of the Court of Appeals' appellate jurisdiction in a case decided by a court in banc. The critical language of Article IV, § 22, is that the "decision in banc shall not *preclude* the right of Appeal, or writ of error to the adverse party, in those cases, civil or criminal, in which appeal, or writ of error to the Court of Appeals *may be allowed by Law.*" (Emphasis added).

Although there is no ambiguity in the words "Court of Appeals," there is a degree of ambiguity in the remaining language of the clause. It is significant that the clause is not a specific grant of circumscribed authority to the Court of Appeals. Instead, it is written in preclusive terms, providing that an appeal to a court in banc does not *preclude* the appellee from invoking the Court of Appeals' jurisdiction as "may be allowed by law."

While the words "appeal, or writ of error" may in isolation seem to mean a direct appeal or writ issued to an appellate court by a court of equity, it must be remembered that the phrase encompassed the Court of Appeals' entire appellate jurisdiction in 1867. Moreover, the language "may be allowed by law" reflects a recognition by the framers of Article IV, § 22, that the nature of the Court of Appeals' appellate jurisdiction may be changed from time to time by the General Assembly.

Also, the word "appeal" is sometimes given a broader meaning than a right of direct appeal. It is often used to

signify "appellate jurisdiction." For example, after 1975 almost all of the Court of Appeals' appellate jurisdiction was by the discretionary writ of certiorari instead of direct appeal. Nonetheless, the Maryland Rules for several years after 1975 sometimes referred to the Court of Appeals' certiorari jurisdiction as an "appeal" and the parties as "appellant" and "appellee" instead of "petitioner" and "respondent." *See also* present Rule 8–132. In addition, the fact that this Court's name under the Constitution is Court of *Appeals* does not mean that our jurisdiction is limited to direct appeals.

Furthermore, the debates and discussions at the 1867 Constitutional Convention demonstrate the intent that the appellee before the court in banc be able to invoke the full appellate jurisdiction of the Court of Appeals as may be prescribed by law. This is the reason why the words "writ of error" and "civil or criminal" were amended into Delegate Alvey's original draft of Article IV, § 22. Construing the language "Appeal, or writ of error ... [as] may be allowed by Law" to mean "appellate jurisdiction" is much more consistent with the history of § 22 than any other construction would be.

Finally, it is a settled principle of statutory or constitutional construction that a provision should not be construed so as to render it nugatory. *See, e.g., Kushell v. Department of Natural Resources,* 385 Md. 563, 870 A.2d 186 (2005); *Gwin v. Motor Vehicle Administration,* 385 Md. 440, 869 A.2d 822 (2005); *Comptroller v. Phillips, supra,* 384 Md. at 591, 865 A.2d at 594 (2005); *Pete v. State,* 384 Md. 47, 65–66, 862 A.2d 419, 430 (2004); *Piscatelli v. Liquor Board,* 378 Md. 623, 632, 837 A.2d 931, 936 (2003); *Atlantic Golf v. Maryland Economic Development Corp.,* 377 Md. 115, 125, 832 A.2d 207, 213 (2003). If we were to construe "Appeal, or writ of error" in Article IV, § 22, to mean only a direct appeal or traditional writ of error, the clause providing for further appellate review in the Court of Appeals would be rendered entirely nugatory. As previously mentioned, this Court's appellate jurisdiction is almost all pursuant to the discretionary writ of certiorari. The only cases which, in the last several years, have come to this Court

by direct appeal pursuant to statute are first degree murder cases in which capital punishment has been imposed and certain types of cases under the election laws. A court in banc has no jurisdiction over either of these categories of cases. *Board v. Haberlin, supra,* 320 Md. at 407–408, 578 A.2d at 219. Writs of error were formally abolished by former Maryland Rule 810, effective January 1, 1957, and they had become obsolete long before that time. *See Sheeler v. Handelman,* 212 Md. 152, 160–161, 129 A.2d 78, 83 (1957).

Consequently, if we were to construe Article IV, § 22, as permitting appellate review of an in banc decision only where direct appeals or writs of error to the Court of Appeals were allowed by law, there could at the present time be no further appellate review of decisions by courts in banc. This would certainly *not* be in accord with the intent of the 1867 Constitutional Convention.

Under the only reasonable interpretation of Article IV, § 22, in light of the present statutory provisions governing the Court of Appeals' jurisdiction, an appellee in the court in banc, after an appealable judgment by the court in banc, is entitled to file in the Court of Appeals a petition for a writ of certiorari pursuant to the current statutory provisions and rules governing certiorari petitions and certiorari practice in the Court of Appeals. The Court of Appeals will consider such certiorari petitions in the same manner in which it considers other certiorari petitions, and will either deny them or grant them. As with other certiorari petitions, the Court of Appeals, if it decides to grant a petition for review of an in banc decision, may limit the issues which it will consider or may add issues to those presented by the petitioner.

The only difference between the certiorari procedure and practice with respect to in banc cases, and such procedure and practice with respect to other types of cases, is that the appellant in the court in banc is not entitled to file a certiorari petition or cross-petition. Giving an appellant in the court in banc a right to file a certiorari petition or cross-petition would clearly violate the intent reflected in Article IV, § 22, of the

Constitution. The appellant in the court in banc, however, may file an answer to a certiorari petition filed by the in banc appellee.[16]

## D.

 Our holding that the Court of Special Appeals lacked authority to exercise jurisdiction over the merits of this appeal does not mean that the Court of Special Appeals had no jurisdiction whatsoever over the case and was required to dismiss the appeal.

 Under settled Maryland law, if a case is timely filed in a Maryland court which is not authorized to exercise jurisdiction over the merits of the case, but if another Maryland court is authorized to exercise jurisdiction, the former court may transfer the case to the court which can properly exercise jurisdiction. A situation similar to that in the present case occurred in *Shell Oil Co. v. Supervisor*, 276 Md. 36, 343 A.2d 521 (1975). *Shell* involved two statutory provisions, one of which provided that, prior to July 1, 1975, "appeals" from the Maryland Tax Court were to be taken directly to the Court of Appeals, and one of which provided that, from and after July 1, 1975, "appeals" from the Tax Court were to be taken directly to the Court of Special Appeals. This Court in *Shell* held that both statutory provisions were unconstitutional under Article IV of the Maryland Constitution and Article 8 of the Maryland Declaration of Rights. We further held that only the circuit courts could exercise initial jurisdiction over actions to review decisions of the Tax Court. Instead of dismissing the "appeal" from the Tax Court to this Court, however, we transferred the case to the appropriate circuit court, stating (276 Md. at 49–50, 343 A.2d at 529):

---

**16.** Our holdings today will result in rendering ineffective certain provisions of the Maryland Rules. We shall request that the Court of Appeals Standing Committee on Rules of Practice and Procedure study the matter and recommend to the Court appropriate changes in the rules.

"Our holding that the Constitution does not allow us to review directly Tax Court decisions does not under the peculiar circumstances here require that the case be dismissed. Shell properly sought judicial review under the statutory provisions and rules which, prior to our decision today, governed such judicial review. Consequently, we believe that the appropriate action would be to transfer the case, including the complete record and briefs filed in this Court, to the Circuit Court for Prince George's County for expeditious judicial review by that court of the Tax Court's decision. Other cases pending on our docket in the same posture will also be transferred to the appropriate trial courts, and we assume that the Court of Special Appeals will do likewise."

*See, e.g., Greenhorne & O'Mara, Inc. v. Trustees of Clients' Security Trust Fund,* 371 Md. 573, 810 A.2d 937 (2002) (Transferring the case from the Court of Appeals to the Circuit Court for Baltimore County); *Ong v. Gingerich,* 371 Md. 574, 810 A.2d 937 (2002) (Transferring the case from the Court of Appeals to the Circuit Court for Washington County); *Houghton v. County Com'rs of Kent Co.,* 307 Md. 216, 228, 513 A.2d 291, 297 (1986) ("In the case at bar, unlike *Shell,* the filing of an action in this Court was not timely and was not in accordance with the rules. Furthermore, there is no court, which properly has jurisdiction over the plaintiffs' appeal, to which this case could be transferred"); *White v. Prince George's Co.,* 282 Md. 641, 656–657, 387 A.2d 260, 269 (1978) ("[J]udicial declarations of unconstitutionality do not always result in statutes being treated as nullities for all purposes. * * * Moreover, in the *Shell* case . . ., we gave some effect to the very statute which we declared unconstitutional"); *Comptroller v. Diebold, Inc.,* 279 Md. 401, 406, 369 A.2d 77, 80 (1977); *Eastgate Associates v. Apper,* 276 Md. 698, 701, 350 A.2d 661, 663 (1976) ("[U]nder appropriate circumstances, and where another court would have jurisdiction, the appellate court may transfer the case to the court having jurisdiction").[17]

---

**17.** Furthermore, because the Court of Special Appeals is not totally without jurisdiction in cases like the present one, any prior Court of

The above-reviewed case law is reflected in Maryland Rule 8–132 with regard to the Court of Appeals and Court of Special Appeals. Rule 8–132 states:

"**Rule 8–132. Transfer of appeal improperly taken.**

If the Court of Appeals or the Court of Special Appeals determines that an appellant has improperly noted an appeal to it but may be entitled to appeal to another court exercising appellate jurisdiction, the Court shall not dismiss the appeal but shall instead transfer the action to the court apparently having jurisdiction, upon the payment of costs provided in the order transferring the action."

On numerous occasions litigants take appeals to the Court of Special Appeals from circuit court judgments in cases where the circuit courts, in the exercise of appellate jurisdiction, have reviewed decisions by the District Court. The Court of Special Appeals, in accordance with Rule 8–132, routinely transfers these cases to the Court of Appeals. The Court of Appeals treats the notices of appeal as if they were certiorari petitions, although these litigants are given an opportunity to file supplements to the petitions if they so desire. The cases are then dealt with in the same manner as all other certiorari petitions.

■ If, prior to the filing of the notice of appeal in the present case, this Court had held that the Court of Special Appeals lacked authority to exercise jurisdiction over the merits of appeals from courts in banc, the Court of Special Appeals would have transferred the case to this court pursuant to Rule 8–132. At the time this appeal was taken to the Court of Special Appeals, however, that Court had no reason to anticipate our decision on the jurisdictional issue. Nevertheless, the respondent had filed a timely notice of appeal from the court in banc, and the petitioner ultimately brought the case to this Court by a timely certiorari petition which we

Special Appeals judgments, which have become final, in cases from in banc courts, are valid and not subject to collateral attack.

granted. Under the circumstances, we believe that the merits of the case are properly before us.

### III.

The merits of the appellate proceedings in this case are concerned entirely with the motion for a new trial limited to damages and with the rulings in the courts below with regard to that motion. The plaintiff Bienkowski presented a single issue on appeal to the court in banc, namely whether Judge Heller abused his discretion in denying the motion for a new trial limited to damages, and the plaintiff prevailed on that issue before the court in banc. In this Court the plaintiff argues that the pertinent issue is whether the court in banc, rather than the single circuit court judge, abused its discretion.

The respondent Brooks, on the other hand, argues that the pertinent issue before this Court is whether Judge Heller abused his discretion in denying the motion for a new trial limited to damages. The respondent, obviously, takes the position that Judge Heller did not abuse his discretion.

As to both the standard of appellate review and whether there was an abuse of discretion, the respondent has the better argument.

### A.

As pointed out at the beginning of this opinion, a court in banc under Article IV, § 22, "is established and functions 'as a separate appellate tribunal, and not merely as an arm of the trial court.'" *Board v. Haberlin, supra,* 320 Md. at 406, 578 A.2d at 218. The appeal to an in banc court is "a substitute or alternate for an appeal to the Court of Appeals or ... the Court of Special Appeals." *Haberlin,* 320 Md. at 406, 578 A.2d at 219. The " 'court in banc acts only as an appellate tribunal so that its decisions are not those of a reconsidering trial court but are reviewable as final appellate judgments.'" *Dabrowski v. Dondalski,* 320 Md. 392, 396, 578

A.2d 211, 213 (1990), quoting *Estep v. Estep, supra,* 285 Md. at 421, 404 A.2d at 1043.

In *Dean v. State,* 302 Md. 493, 497, 489 A.2d 22, 24 (1985), this Court, in an opinion by Judge Marvin Smith, posed the question of whether "there is any different standard of appealability to a court in banc from that of the Court of Special Appeals." This Court then answered the question by stating (*ibid.*): "There is no different standard."

Given the nature of an appeal to a court in banc, it is clear that the abuse of discretion issue is the same in this Court as it was before the in banc court. The issue is whether Judge Heller abused his discretion in denying the motion for a new trial. The standard of review in the in banc court and in this Court is identical.

When a trial judge's ruling on a motion for a new trial is discretionary, and when the movant claims, in an appeal on the record, that the denial of the motion for a new trial was an abuse of discretion, the issue before an intermediate appellate court and before this Court upon certiorari review is the same, *i.e.,* whether the trial judge abused his or her discretion in denying the motion for a new trial. In such an appeal, the intermediate appellate court has no discretion of its own to exercise. Instead, it is deciding an issue of law. The intermediate appellate court must decide whether, under the appropriate legal standards applicable to the circumstances, the trial court abused its discretion. The legal issue before this Court, upon certiorari review, is the same. *See, e.g., Tierco Maryland, Inc. v. Williams,* 381 Md. 378, 401–417, 849 A.2d 504, 518–528 (2004); *Merritt v. State,* 367 Md. 17, 25–31, 785 A.2d 756, 761–765 (2001); *Owens–Corning Fiberglas Corp. v. Garrett,* 343 Md. 500, 517–526, 682 A.2d 1143, 1151–1155 (1996).

### B.

The opinion of the Court of Special Appeals and the issues in the plaintiff's certiorari petition were premised upon

the theory that Judge Heller denied the motion for a new trial on the ground that the jury's verdict was a "compromise verdict" and that, under Maryland law, a "compromise verdict" is a sufficient basis for a trial judge to deny a motion for a new trial in a negligence case like this one. This premise, in our view, is erroneous.

Although Judge Heller in his opinion mentioned that he "suspected" that the jury reached a "compromise verdict," this was clearly not the basis for the denial of the motion for a new trial. A reading of Judge Heller's opinion discloses that the new trial motion was denied because the plaintiff insisted upon a new trial limited to damages. The plaintiff wanted to keep intact the favorable parts of the jury's verdict but have a re-trial only on the unfavorable parts. Judge Heller believed that this would be unfair.

Judge Heller may well have granted an entire new trial in this case if the plaintiff were willing. The trial judge's denial of the plaintiff's motion was based entirely on the perceived unfairness of a new trial limited to damages. This was not an abuse of discretion.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED. JUDGMENT OF THE COURT IN BANC FOR THE FIFTH JUDICIAL CIRCUIT REVERSED. CASE REMANDED TO THE COURT IN BANC WITH DI-RECTIONS TO AFFIRM THE JUDGMENT OF THE CIR-CUIT COURT FOR ANNE ARUNDEL COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE EQUALLY DIVIDED BETWEEN THE PARTIES. COSTS IN THE COURT IN BANC TO BE PAID BY THE PLAINTIFF BIENKOWKSI.*